UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
TRUSTEES OF THE PLUMBERS LOCAL
UNION NO. 1 WELFARE FUND, TRADE
EDUCATION FUND, AND 401(K)
SAVINGS PLAN, TRUSTEES OF THE
UNITED ASSOCIATION NATIONAL                      REPORT AND
PENSION FUND, AND THE TRUSTEES                    RECOMMENDATION
OF THE INTERNATIONAL TRAINING                     25 CV 2234 (PKC)(RML)
FUND,

           Plaintiffs,

    -against-

LG ELITE PLUMBING, INC. and
LORENZO PASTENA,

          Defendants.
--------------------------------------------------------X
LEVY, United States Magistrate Judge:

        By order dated October 2, 2025, the Honorable Pamela K. Chen, United States

District Judge, referred plaintiffs' motion for default judgment to me for report and

recommendation.  For the reasons stated below, I respectfully recommend that the motion be

granted.

**BACKGROUND AND FACTS**

        Plaintiffs Trustees of the Plumbers Local Union No. 1 Welfare Fund, Trade

Education Fund, and 401(k) Savings Plan (the "Local 1 Funds"), Trustees of the United

Association National Pension Fund (the "UANPF"), and Trustees of the International Training

Fund (the "ITF," together with the UANPF, the "National Funds") (collectively, "plaintiffs" or

the "Funds") brought this case on April 22, 2025, asserting claims under sections 404, 406, 409,

502(a)(3) and 515 of the Employee Retirement Income Security Act, as amended, 29 U.S.C. §§

1104, 1106, 1109, 1132(a)(3), 1145 ("ERISA"), and section 301 of the Labor Management

Relations Act of 1947, 29 U.S.C. § 185 ("LMRA"), to collect delinquent employer benefit

contributions.  (See generally Complaint, dated Apr. 22, 2025 ("Compl."), Dkt. No. 1.) Defendants LG Elite Plumbing, Inc. ("LG Elite" or the "Company") and Lorenzo Pastena ("Pastena," together with the Company, "defendants"), failed to answer or move with respect to the complaint, and the Clerk of the Court noted their defaults on July 8, 2025.  (See Clerk's Certificate of Default, dated July 8, 2025, Dkt. No. 15.)

Since May 10, 2022, LG Elite has been bound to a collective bargaining agreement (the "CBA") with Local Union No. 1 of the United Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry of the United States and Canada (the "Union").  (Declaration of Wendy Salvatierra, dated Sept. 26, 2025 ("Salvatierra Decl."), Dkt. No. 19, ¶¶ 4-9, 11; Exs. A, B, C.)  The CBA requires the Company to make certain monetary contributions to the Funds for all plumbing work performed by its employees in the trade and geographical jurisdiction of the Union.  (Id.; Compl. ¶¶ 12-13, 19.)

The Funds are governed by trust agreements (the "Trust Agreements"), which are incorporated by reference in the CBAs and are binding on the Company.  (See Salvatierra Decl. ¶¶ 12-13, Exs. E, F, and G, Art. XV; Declaration of Toni C. Inscoe, dated Sept. 26, 2025 ("Inscoe Decl."), Dkt. No. 20, ¶¶ 6-12, Exs. P, Q.)  The Trust Agreements permit the Funds to establish policies, rules, and procedures for collecting unpaid contributions and other amounts due to the various benefit funds.  (Salvatierra Decl. ¶ 14, Exs. E, G, Art. V § 4(x); Ex. F, Art. V § 4(bb); Inscoe Decl. ¶ 12, Ex. P, Art. V § 4(aa); Ex. Q, Art. V § 5(dd).)  Pursuant to the Trust Agreements, the Funds adopted policies for the collection of delinquent fringe benefit employer contributions (the "Collection Policies").  (Salvatierra Decl. ¶ 15, Exs. H, I; Inscoe Decl. ¶ 14, Exs. R, S.)

2

According to the CBAs, Trust Agreements, and Collection Policies, the Company is required to submit reports to the Funds detailing the number of hours of covered work performed by its employees ("remittance reports"), as well as the corresponding benefit contributions to the Funds, by the twentieth day of the month following the month in which the hours were worked.  (Salvatierra Decl. ¶¶ 16-17, Exs. B-C, Arts. III-IV; Exs. E-G, Art. VI; Ex. H, Art. II; Inscoe Decl. ¶ 5.)  Contributions are calculated by taking the number of hours of covered work performed during the reporting period and multiplying by the applicable rates set forth in the CBAs.  (Salvatierra Decl. ¶ 19, Exs. B-C, Arts. III-IV.)  Similarly, Participant Amounts, consisting of 401(k) contributions and elective deferrals (the "401(k) Salary Deferrals"), are due to the 401(k) Savings Plan "seven (7) business days after the end of the payroll period from which [401(k) Salary Deferrals] were made and deducted from wages of the employee."  (Id. ¶ 18, Ex. I, Art. III § B.1.)

As explained in more detail below, the Company failed to remit contributions to the Local 1 Funds for the period of May through June 2024, totaling $11,957.42.  (Id. ¶¶ 24-25, Exs. J, K.)  The Company also failed to report the number of hours of covered work performed by its employees for the period of July 2024 through March 2025.  (Id. ¶ 26.)  The Local 1 Funds have therefore estimated the amount of contributions owed for the period July 2024 through March 2025 in accordance with the Collection Policies, and have determined that defendants owe the Local 1 Funds contributions of $98,079.39 for that period.  (Id. ¶¶ 27, 31, Exs. H, L.)  LG Elite also failed to remit 401(k) Salary Deferrals for the period of April 16, 2024 to January 7, 2025, and the Funds have projected that LG Elite owes 401(k) Salary Deferrals of $22,579.44, plus lost earnings in 401(k) salary deferrals of $1,829.21.  (Id. ¶¶ 42, 46, 49, Exs. M, N, O.)  The Company also owes UANPF delinquent contributions of $2,141.46 and ITF $67.40 for the

3

period of May through June 2024.  (Inscoe Decl. ¶ 17, Ex. J.)  In addition, the National Funds

estimated delinquent contributions of $19,254.87 for the period of July 2024 through March

2025.  (Id. ¶ 23.)  Plaintiffs seek to recover delinquent contributions, liquidated damages,

interest, administrative fees, attorney's fees, and costs.  (Memorandum of Law in Support of

Plaintiffs' Motion for Default Judgment, dated Sept. 29, 2025 ("Pls.' Mem."), Dkt. No. 22, at 21-

23.)

### DISCUSSION

A.  Default Standard

The Federal Rules of Civil Procedure prescribe a two-step process for a plaintiff

to obtain a default judgment.  First, "[w]hen a party against whom a judgment for affirmative

relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or

otherwise, the clerk must enter the party's default," as it has done here.  FED. R. CIV. P. 55(a).

Second, after a default has been entered against the defendant and the defendant fails to appear

or move to set aside the default under Rule 55(c), the court may, on a plaintiff's motion, enter a

default judgment.  FED. R. CIV. P. 55(b)(2).  To grant a default judgment, the court must ensure

that the plaintiff took all the required steps in moving for default judgment, including providing

proper notice to defendants of the lawsuit.  A court may not enter default judgment "unless it has

jurisdiction over the person of the party against whom the judgment is sought, which also means

that he must have been effectively served with process."  BASF Corp. v. Original Fender

Mender, Inc., No. 23 CV 2796, 2023 WL 8853704, at *5 (E.D.N.Y. Dec. 22, 2023) (quoting US

Flour Corp. v. Certified Bakery, Inc., No. 10 CV 2522, 2012 WL 728227, at *4 (E.D.N.Y. Mar.

6, 2012)).  Here, plaintiffs have demonstrated that they properly served defendants with the

summons and complaint.  (See Affidavit of Service of Edward J. Bowmaker, sworn to Apr. 24,

4

2025, Dkt. No. 6; Affirmation of Service of Steeve Louis, dated May 2, 2025, Dkt. No. 8.)

Plaintiffs have also demonstrated that they served the Motion for Default Judgment and

accompanying submissions on defendants in compliance with Local Civil Rule 55.2(a)(3).  (See

Certificate of Service of Diana R. Cohn, Esq., dated Sept. 29, 2025, Dkt. No. 18-1.)[1]

   B.  Standing

   Standing is an "irreducible constitutional minimum."  Lujan v. Def. of Wildlife,

504 U.S. 555, 560 (1992).  Therefore, the court must evaluate whether plaintiffs have standing

even where standing is not challenged.  See Garnet v. Ramos Bros. Inc., No. 16 CV 2792, 2017

WL 590323, at *1 (E.D.N.Y. Feb. 13, 2017) (citation omitted).  "To establish standing, a

---

[1]  Plaintiffs have not, however, fully complied with the Servicemembers Civil Relief Act ("SCRA"), which requires a plaintiff requesting a default judgment to "file with the court an affidavit stating whether or not the defendant is in military service and showing necessary facts to support the affidavit."  50 U.S.C. § 3931(b)(1)(A); see also Loc. Civ. R. 55(a)(1)(B) ("[A]ny party seeking a default judgment must file . . . an affidavit or declaration showing that . . . the party seeking default judgment has complied with the [SCRA.]").  "The non-military affidavit must be based not only on an investigation conducted after the commencement of an action or proceeding but also after a default in appearance by the party against whom the default judgment is to be entered."  Tenemaza v. Eagle Masonry Corp., No. 20 CV 452, 2021 WL 8317120, at *5 (E.D.N.Y. July 22, 2021) (quoting Pruco Life Ins. Co. of New Jersey v. Est. of Locker, No. 12 CV 882, 2012 WL 3062754, at *1 (E.D.N.Y. July 23, 2012)).  "The court lacks the power to excuse compliance with this statute."  Uribe v. Nieves, No. 17 CV 5155, 2018 WL 4861377, at *1 (E.D.N.Y. Sept. 26, 2018).  To ensure compliance with the SCRA, a plaintiff can "obtain a report certifying active-duty military status through the [SCRA] website."  Morales v. Los Cafetales Rest. Corp., No. 21 CV 1868, 2023 WL 375647, at *5 n.3 (E.D.N.Y. Jan. 3, 2023), report and recommendation adopted, 2023 WL 375642 (E.D.N.Y. Jan. 24, 2023) (citing https://scra.dmdc.osd.mil/scra).  Plaintiffs' counsel has stated that defendant Pastena "is not a minor, incompetent, or engaged in active military" (Declaration of Diana R. Cohn, Esq., dated Sept. 29, 2025, Dkt. No. 21, ¶ 9), but has not described any investigation to support that assertion or submitted a report from the Department of Defense website certifying that this defendant is not in active military service.  See Wilmington Sav. Fund Soc'y, FSB as trustee of Aspen Holdings Tr. v. Fernandez, 712 F. Supp. 3d 324, 333 (E.D.N.Y. 2024) ("Adequate proof might consist of a report from the Department of Defense's website obtained after the defendant's default certifying that the defendant is not in active military service.").  I therefore recommend that plaintiffs be required to show compliance with the SCRA before judgment is entered against defendant Pastena.

plaintiff must prove: '(1) injury in fact, which must be (a) concrete and particularized, and (b) actual or imminent; (2) a causal connection between the injury and the defendant's conduct; and (3) that the injury is likely to be redressed by a favorable decision.'" Hennessy by & through Hennessy v. 194 Bedford Ave. Rest. Corp., No. 21 CV 5434, 2022 WL 4134502, at *2 (E.D.N.Y. Aug. 8, 2022) (quoting Kreisler v. Second Ave. Diner Corp., 731 F.3d 184, 187 (2d Cir. 2013)).

"ERISA is a comprehensive federal law that sets standards for private retirement and health plans, governs their administration, and generally preempts state regulation of benefits plans." Annuity, Pension, Welfare, Training & Lab. Mgmt. Coop. Tr. Funds of Int'l Union of Operating Eng'rs Loc. 14-14B, AFL-CIO v. C.M. Ashland Constr., 714 F. Supp. 3d 167, 176 (E.D.N.Y. 2024) (citing ERISA § 514(a), 29 U.S.C. § 1144(a)). "ERISA vests the Court with jurisdiction over civil actions brought by fiduciaries of employee benefit plans to enforce provisions of such plans." Id. (quoting Trs. of Loc. 7 Tile Indus. Welfare Fund v. City Tile, Inc., No. 10 CV 322, 2011 WL 917600, at *1 (E.D.N.Y. Feb. 18, 2011), report and recommendation adopted, 2011 WL 864331 (E.D.N.Y. Mar. 10, 2011); 29 U.S.C. § 1132(a)(3) (permitting fiduciaries of a plan to bring an ERISA action)). Here, plaintiffs are fiduciaries within the meaning of section 3(21) of ERISA, 29 U.S.C. § 1002(21), and the Funds are multi-employer/employee benefit plans under ERISA. See LoPresti v. Terwilliger, 126 F.3d 34, 40 (2d Cir. 1997) (explaining the broad, functional definition of fiduciaries under ERISA); Trs. of Mosaic & Terrazzo Welfare Pension, Annuity, & Vacation Funds v. Cont'l Floors, Inc., No. 13 CV 1739, 2013 WL 5637492, at *4 (E.D.N.Y. Oct. 15, 2013) ("Section 502 of ERISA (29 U.S.C. § 1132) creates jurisdiction, endowing plan trustees with standing to enforce section 515."); (Compl. ¶¶ 1, 4-7.)

6

Section 301 of the LMRA provides a federal cause of action for "violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce." 29 U.S.C. § 185(a). The LMRA confers standing on unions and employee benefit funds. See Metal Lathers Loc. 46 Pension Fund v. River Ave. Contracting Corp., 954 F. Supp. 2d 250, 256 (S.D.N.Y. 2013) (employee benefit funds have standing to sue under LMRA for employer's failure to make contributions required under collective bargaining agreement with union); Legal Aid Soc'y v. City of New York, 114 F. Supp. 2d 204, 214 (S.D.N.Y. 2000) ("Section 301 generally grants unions standing to vindicate employee rights pursuant to a collective bargaining agreement."). Accordingly, plaintiffs have established their standing under both ERISA and the LMRA.

C.  Liability

An entry of default alone is insufficient to establish liability, "since a party in default does not admit mere conclusions of law." Trs. of the Plumbers Loc. Union No. 1 Welfare Fund v. Philip Gen. Constr., No. 05 CV 1665, 2007 WL 3124612, at *3 (E.D.N.Y. Oct. 23, 2007) (citation omitted). A defendant's "default is deemed to constitute a concession of all well pleaded allegations of liability." Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992). Where a plaintiff moves for default judgment, the court "is required to accept all of [the plaintiff's] factual allegations as true and draw all reasonable inferences in [the plaintiff's] favor." Finkel v. Romanowicz, 577 F.3d 79, 84 (2d Cir. 2009) (citing Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981)). The court must also "determine whether [plaintiffs'] allegations establish [defendants'] liability as a matter of law." Id.

Section 515 of ERISA requires that "[e]very employer who is obligated to make contributions to a multi employer plan under the terms of the plan or under the terms of a collectively bargained agreement shall . . . make such contributions in accordance with the terms and conditions of such plan or agreement." 29 U.S.C. § 1145. In addition, section 301(a) of the LMRA authorizes the court to enforce the obligations imposed by the applicable collective bargaining agreement. (Compl. ¶¶ 53-56); see 29 U.S.C. 185(a); Bricklayers Ins. & Welfare Fund v. Doran Tatrow Assocs., Inc., No. 18 CV 2475, 2021 WL 7208997, at *3 (E.D.N.Y. Mar. 15, 2021). Here, plaintiffs' undisputed allegations establish that the Company is liable to plaintiffs under both ERISA and the LMRA. See Bricklayers Ins. & Welfare Fund v. Primo Brick, Inc., No. 11 CV 5742, 2013 WL 2120338, at *3 (E.D.N.Y. Apr. 3, 2013) (citations omitted) ("Plaintiffs allege that defendant failed to make contributions to the Funds. . . .Therefore, defendant's failure . . . constitutes a violation of ERISA. . . .[P]laintiffs allege that defendant failed to remit dues to Local 1 and make required contributions to [the Labor Management Relations Committee]. . . . [T]hus, defendant is liable under Section 301 of the LMRA.").

In addition, plaintiffs seek to hold defendant Pastena personally liable for the Company's delinquent contributions to the Funds because he breached his fiduciary duty to the Funds under ERISA. (Pls.' Mem. at 8-11; Compl. ¶¶ 1, 40, 57-64.) "A fiduciary, under ERISA, is someone who exercises any discretionary authority or discretionary control respecting management of [an ERISA benefit] plan *or* exercises any authority or control respecting management or disposition of its assets." Bricklayers & Allied Craftworkers Local 2 v. Moulton Masonry & Constr., 779 F.3d 182, 188 (2d Cir. 2015) (internal quotation omitted) (alterations in original). "To establish the personal liability of a fiduciary, a plaintiff must show 'both that (1)

the unpaid contributions were plan assets and (2) [the defendant] exercised a level of control over those assets sufficient to make him [or her] a fiduciary.'"  Bricklayers Ins. & Welfare Fund v. Alpha Omega Bldg. Corp., No. 19 CV 2600, 2021 WL 3861762, at *3 (E.D.N.Y. Aug. 30, 2021) (quoting Bricklayers Ins. & Welfare Fund v. Job Opportunities for Women, Inc., No. 16 CV 6935, 2019 WL 343243, at *3 (E.D.N.Y. Jan. 28, 2019) (alterations in original)).

As to the first requirement, sums of money due and owing to an employee benefit plan constitute plan assets when the plan documents specifically designate them as such.  See Moulton Masonry, 779 F.3d at 189 (finding individual defendant liable as ERISA fiduciary where "contributions were designated as plan assets under the trust documents"); Trs. of the Plumbers Loc. Union No. 1 Welfare Fund v. Temperini Mech., Inc., No. 12 CV 5646, 2014 WL 2644774, at *4 (E.D.N.Y. June 13, 2014) (finding personal liability for delinquent contributions to benefit funds where the funds' trust agreements defined unpaid contributions as plan assets).  Here, the Trust Agreements explicitly state that plan assets include "sums of money . . . which are due and owing to the Fund by the Employers as required by the applicable collective bargaining agreement."  (See Compl. ¶ 16; Salvatierra Decl. ¶¶ 12-13; Exs. E, F, G, Art. II § 2; Inscoe Decl. ¶¶ 6-7; Exs. P-Q, Art. II § 2.)  Therefore, the unpaid contributions constitute plan assets.

As to the second requirement, the well-pleaded allegations in the complaint establish that Pastena exercised a level of operational control over the Funds' plan assets sufficient to make him a fiduciary.  (See Compl. ¶¶ 36-40.)  Plaintiffs allege that, as the owner, principal, and chief executive officer of the Company, Pastena had full control over the Company's assets, including the companies' bank accounts, contracts, equipment, and other

9

assets, and was responsible for deciding whether to use the assets in the Company's possession to pay contributions to the Funds.  (Id. ¶¶ 11, 36-37.)

Thus, plaintiffs have established that Pastena is a fiduciary pursuant to ERISA § 3(21)(A)(i).  See Moulton Masonry, 779 F.3d at 189 (finding fiduciary liability where a defendant determined which creditors the corporate defendant would pay, exercised control over money due and owing to plaintiff funds and failed to remit employer contributions under his control); Trs. of the Plumbers Loc. Union No. 1 Welfare Fund v. Bass Plumbing & Heating Corp., No. 13 CV 6797, 2014 WL 6886107, at *4-5 (E.D.N.Y. Dec. 8, 2014) (finding defendant personally liable for breach of fiduciary duty in light of his authority to determine which obligations the defendant company paid).

D.  Damages

As an initial matter, ERISA § 409(a) provides that "[a]ny person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries . . . shall be personally liable to make good to such plan any losses . . . resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through the use of assets of the plan by the fiduciary."  29 U.S.C. § 1109(a).  In determining the amount of plan losses resulting from a breach of fiduciary duty, the Second Circuit has found that an individual defendant is liable for the full amount of the delinquent benefit contributions, plus any prejudgment interest that has accrued, but not for liquidated damages.  See Moulton Masonry, 779 F. 3d at 190; see also Loc. 1992 Pension Fund v. A-G Elec. Supply Co., No. 21 CV 3441, 2024 WL 872467, at *6 (E.D.N.Y. Feb. 6, 2024) ("'[L]iquidated damages do not serve to make good to the plan any losses and do not constitute appropriate equitable relief as recognized by the common law of trusts[,]' and, accordingly, courts in this

10

Circuit have declined to award liquated damages against individual fiduciaries in ERISA cases." (quoting Moulton Masonry, 779 F.3d at 190)), report and recommendation adopted, 2024 WL 866235 (E.D.N.Y. Feb. 28, 2024).  Accordingly, I respectfully recommend that Pastena be held liable for breaching his fiduciary duties to the Funds in the amount of the unpaid benefit contributions plus prejudgment interest at the rates set forth in the CBAs and other governing documents, but not for liquidated damages.

Although the court accepts factual allegations in the complaint for purposes of determining liability, the court must ensure there is proof in the record to support a damages award.  See Flaks v. Koegel, 504 F.2d 702, 707 (2d Cir. 1974) ("While a default judgment constitutes an admission of liability, the quantum of damages remains to be established by proof unless the amount is liquidated or susceptible of mathematical computation") (citations omitted); Overcash v. United Abstract Group, Inc., 549 F. Supp. 2d 193, 196 (N.D.N.Y. 2008) ("[E]ven upon default, a court may not rubber-stamp the non-defaulting party's damages calculation, but rather must ensure that there is a basis for the damages that are sought") (citing Credit Lyonnais Sec. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999)).  "The burden is on the plaintiff[s] to establish [their] entitlement to recovery." Bravado Int'l Group Merch. Servs., Inc. v. Ninna, Inc., 655 F. Supp. 2d 177, 189 (E.D.N.Y. 2009) (citing Greyhound Exhibitgroup, 973 F.2d at 158).

Under ERISA, the damages recoverable for delinquent contributions are enumerated in section 1132(g)(2), which provides that the court shall award the plan:

> (A) the unpaid contributions,
> (B) interest on the unpaid contributions,
> (C) an amount equal to the greater of-
>     (i) interest on the unpaid contributions, or

> > (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent . . . of the amount determined by the court under subparagraph (A),
>
> (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and
>
> (E) such other legal or equitable relief as the court deems appropriate.

29 U.S.C. § 1132(g)(2).  I will address each category in turn.

### 1.  Delinquent Contributions

#### (a)  The Local 1 Funds

The Company submitted unfunded remittance reports to the Local 1 Funds detailing the number of hours of covered work performed by its employees for May through June 2024.  (See Salvatierra Decl. ¶ 24, Ex. J.)  Based on those unfunded remittance reports, the Funds determined that the Company failed to remit contributions totaling $11,957.42 for that period.  (Id., Ex. K.)  Having reviewed plaintiffs' supporting documentation, I respectfully recommend that the Local 1 Funds be awarded $11,957.42 in unpaid employee benefit contributions from defendants for May through June 2024.

In addition, LG Elite failed to report the number of hours of covered work performed by its employees for the period of July 2024 through March 2025.  (Id. ¶ 26.) Because LG Elite was two or more months delinquent in submitting reports and contributions, the Local 1 Funds have estimated the amount of contributions owed for July 2024 through March 2025 in accordance with the Local 1 Fund Fringe Benefit Collection Policy, which allows the Local 1 Funds to use the "average of the monthly payments based on reports actually submitted by the employer for the last three months for which payments and reports were submitted."  (Id. ¶¶ 27-28, Ex. H, Art. IV ¶ 9.)  Using reports and payments made by LG Elite for October through

December 2023[2], plaintiffs have determined that defendants owe the Local 1 Funds contributions of $98,079.39 for July 2024 through March 2025.  (Id. ¶¶ 29-31, Exs. D, L.)  I therefore recommend that the Local 1 Funds be awarded $98,079.39 in estimated unpaid employee benefit contributions for July 2024 through March 2025.

(b) The National Funds

The Company submitted unfunded remittance reports to the National Funds detailing the number of hours of covered work performed by its employees for May through June 2024.  (See Inscoe Decl. ¶ 16.)  Based on the unfunded remittance reports submitted by the Company, the National Funds determined that the Company failed to remit contributions of $2,141.46 to the UANPF and $67.40 to the ITF, for a total delinquency of $2,208.86 for the period of May through June 2024.  (Id. ¶ 17; Salvatierra Decl., Exs. J, K.)  Having reviewed plaintiffs' supporting documentation, I respectfully recommend that the National Funds be awarded $2,208.86 in unpaid employee benefit contributions from defendants for May through June 2024.

In addition, LG Elite failed to report the number of hours of covered work performed by its employees for the period of July 2024 through March 2025.  (Inscoe Decl. ¶ 18.)  Using reports and payments made by LG Elite for October through December 2023[3] in accordance with the Trust Agreements, plaintiffs have determined that defendants owe the National Funds contributions of $19,254.87 for July 2024 through March 2025.

---

[2]  Specifically, LG Elite made the following payments: October 2023: $11,595.25; November 2023: $10,386.90; December 2023: $10,711.19.  (Salvatierra Decl. ¶ 30.)  The average of these payments equals $10,897.78.  (See id., Exs. D, L.)

[3]  Specifically, LG Elite made the following payments: October 2023: $2,284.92; November 2023: $2,048.88; December 2023: $2,084.48.  (Inscoe Decl. ¶ 22, Ex. T.)  The average of these payments equals $2,139.43.  (Id.)

13

(See Inscoe Decl. ¶¶ 20-21, Ex. P, Art. VI § 6; Ex. Q, Art. VI § 7; Ex. T; Salvatierra Decl., Ex. L.)

### (c) 401(k) Salary Deferrals

Under the 401(k) Collection Policy, employers who fail to remit deferrals to the Local 1 Funds within seven business days after the end of the payroll period from which the deferrals were made and deducted from the wages of the employees shall cause the employer to be liable for the delinquent deferrals. (See Salvatierra Decl. ¶ 37, Ex. I., Art. III § B.) 401(k) salary deferrals are considered plan assets of an ERISA employee benefit fund. See Trs. of Plumbers Loc. Union No. 1 Welfare Fund, Additional Sec. Benefit Fund, Vacation & Holiday Fund, Trade Educ. Fund, & 401(k) Sav. Plan v. J.& A. Contractors Corp., No. 20 CV 1189, 2021 WL 7159908, at *4 (E.D.N.Y. Oct. 28, 2021) (awarding damages for 401(k) salary deferrals where the union's uncontested allegations and documentation established defendant's liability), report and recommendation adopted, 2022 WL 42524 (E.D.N.Y. Jan. 5, 2022). Further, the LMRA authorizes the court to enforce the obligations imposed by the applicable collective bargaining agreement. See 29 U.S.C. 185(a); Doran Tatrow Assocs, 2021 WL 7208997, at *3. Accordingly, both LG Elite and Pastena are liable for owed 401(k) salary deferrals.

Moreover, under the CBA and the 401(k) Collection Policy, the Local 1 Funds are entitled to unpaid 401(k) Salary Deferrals as well as lost earnings on unpaid 401(k) deferrals. (See Compl. ¶ 31; Salvatierra Decl. ¶ 37; Ex. I, Art. III § B.) LG Elite failed to remit 401(k) Salary Deferrals for the period of April 16, 2024 to January 7, 2025. (See Salvatierra Decl. ¶ 42, Ex. M.) As a result, the Local 1 Funds also assessed lost earnings on the 401(k) deferrals. (See id. ¶ 39; Ex. I, Art. III § B.) According to the 401(k) Collection Policy, lost earnings are calculated using the DOL VFCP Online Calculator. (Id., ¶¶ 37-41, Ex. I, Art. III § B.) Using

14

that method, the Funds have assessed that LG Elite owes 401(k) Salary Deferrals of $22,579.44 ($578.96[4] × 39 weeks).  (See id. ¶ 46, Ex. N.)  Lost earnings determined by application of the DOL VFCP Online Calculator equal $1,829.21.  (See id. ¶ 49, Ex. N.)

> 2.   Interest, Liquidated Damages, and Administrative Fees

Under ERISA, "interest on unpaid contributions shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of Title 26."  29 U.S.C. § 1132(g)(2).  "Under the LMRA, it is within the court's discretion to award prejudgment interest."  Finkel v. INS Elec. Servs. Inc., No. 06 CV 4862, 2008 WL 941482, *7 (E.D.N.Y. Apr. 4, 2008).  In addition, the court may award "liquidated damages provided for under the plan in an amount not in excess of 20 percent" of the unpaid contributions.  29 U.S.C. § 1132(g)(2)(C)(ii).

Under the documents and instruments governing the Funds—including the CBAs, Trust Agreements, and Collection Policies—employers whose contributions are delinquent, such as the Company, are liable to the Funds for the amount of delinquent contributions, interest calculated from the twentieth day following the due date and compounded annually, plus liquidated damages.  (See Salvatierra Decl. ¶ 32, Exs. B-C, Art. VI § 6; Exs. E-G, Art. VI § 6; Ex. H, ¶ 6; Ex. I, Art. III § B.2.; Inscoe Decl. ¶¶ 9, 11, 15, 24-25.)  The Local 1 Fund Collection

---

[4] LG Elite failed to provide remittance reports for the delinquent 401(k) salary deferrals.  (See Salvatierra Decl. ¶ 42; Ex. M.)  The Trust Agreement of the Plumbers Local Union No. 1 401(k) Savings Fund states that where an employer is two or more months delinquent in making the contributions and has not submitted the required remittance reports, the trustees may project as the amount of the delinquency "the average of the monthly payments or reports actually submitted by the Employer for the last three (3) months for which payments or reports were submitted."  (See id. ¶ 41, Ex. G, Art. 6 § 7.)  The last three months for which payments or reports were submitted by LG Elite were January through March 2024.  (Id. ¶ 44, Ex. O.)  Those payments totaled $7,526.49 for thirteen weeks and the average weekly payment for those weeks was $578.96.  (See id. ¶ 45.)

Policies also allow the Funds to assess a $100 administrative fee for every month for which the employer failed to pay contributions.  (See Salvatierra Decl. ¶ 33, Ex. H, Art. II ¶ 6.)

(a) The Local 1 Funds

Per the CBAs, Trust Agreements, and Collection Policies, interest is charged at the annual rate of ten percent for the Local 1 Funds.  (Id. ¶ 32, Exs. B-C, Art. VI; Exs. E-G, Art. VI § 6; Ex. H ¶ 6; Ex. I, Art. III § B.2.)  Accordingly, defendants are liable to the Local 1 Funds for interest on the delinquent contributions and 401(k) Salary Deferrals at the rate of ten percent per annum, compounded annually, through the date of judgment.[5]  (See id. ¶¶ 32, 38; Ex. N.)

Liquidated damages are calculated as twenty percent of the principal delinquency, totaling $22,007.36 ($110,036.81 × .2).  (See id., Ex. K.)  With respect to the 401(k) Salary Deferrals for the period of April 16, 2024 to January 7, 2025, liquidated damages calculated at the rate of twenty percent of the delinquency total $4,515.89 ($22,579.44 × .2).  (See Salvatierra Decl. ¶¶ 40, 47, Ex. N.)

Finally, since the Company has failed to submit contributions to the Local 1 Funds for eleven months, the administrative fees total $1,100.  (Id. ¶ 36, Ex. K.)

(b) The National Funds

Pursuant to the CBAs, Trust Agreements, and Collection Policies, interest is charged at the annual rate of twelve percent for the UANPF and the ITF.  (Inscoe Decl. ¶ 24;

---

[5]  Interest is calculated by multiplying the contributions due per month by the annual interest rate of ten percent, as provided for in the CBAs and Collection Policies, and then dividing that figure by 365 to yield the daily interest rate.  For example, for May 2024, the contributions of $5,978.71 are multiplied by the ten percent interest rate to yield a total yearly interest of $597.87. That figure is then divided by 365 to render the daily interest rate of $1.64. The daily interest rate is then multiplied by the number of days the contributions are late.  Here, May 2024 contributions were due on June 20, 2024, and interest is calculated from the day following the due date.  (See Salvatierra Decl., Ex. K.)

16

Salvatierra Decl., Ex. K.)  I therefore recommend that interest on the unpaid National Fund contributions be awarded at that rate through the date of judgment. [6]

Liquidated damages are calculated at the rate of ten percent per annum for the UANPF and at the rate of twenty percent per annum for the ITF.  (Inscoe Decl. ¶ 27.)  Accordingly, the Company is liable to the UANPF for liquidated damages in the amount of $2,080.31 and to the ITF in the amount of $132.14.  (Id.; Salvatierra Decl., Ex. K.)

3.   Post-Judgment Interest

"Interest shall be allowed on any money judgment in a civil case recovered in a district court."  28 U.S.C. § 1961.  Post-judgment interest is governed by the federal rate as set forth in 28 U.S.C. § 1961.  See Tacuri v. Nithun Constr. Co., No. 14 CV 2908, 2015 WL 790060, at *12 (E.D.N.Y. Feb. 24, 2015).  I respectfully recommend that plaintiffs be awarded post-judgment interest, to be calculated from the date the Clerk of Court enters judgment in this action until the date of payment, at the rate set forth in 28 U.S.C. § 1961.

4.   Attorney's Fees and Costs

Attorney's fees and costs are mandatory under ERISA.  See 29 U.S.C. § 1132(g)(2)(D); see also Mason Tenders Dist. Council v. Aurash Const. Corp., No. 04 CV 2427, 2006 WL 647884, at *2 (S.D.N.Y. Mar. 15, 2006) ("When a plaintiff prevails in an ERISA action for unpaid contributions, ERISA section 502(g)(2)(D) mandates an award of reasonable attorney's fees and costs of the action, to be paid by the defendant.") (quotation marks and citation omitted).  The CBAs, Trust Agreements, and Collection Policies also provide for

---

[6]  Detailed per diem interest calculations are contained in Exhibit K to the Declaration of Wendy Salvatierra, Administrator of the Local 1 Funds.  (See Salvatierra Decl., Ex K.)

17

plaintiffs' recovery of attorney's fees and costs.  (Salvatierra Decl. ¶¶ 21-22, Ex. P, Art. VI § 5; Ex. Q, Art.VI § 6; Inscoe Decl. ¶ 15.)

Courts in this Circuit exercise their discretion to determine the reasonableness of attorney's fees using the "presumptively reasonable fee" standard.  Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany, 522 F.3d 183, 190 (2d Cir. 2008).  The presumptively reasonable fee, also known as the lodestar, is "the product of a reasonable hourly rate and the reasonable number of hours required by the case."  Millea v. Metro-North R.R. Co., 658 F.3d 154, 166 (2d Cir. 2011).  As a threshold matter, the party seeking fees must provide accurate, detailed and contemporaneous attorney time records.  See Scott v. City of New York, 643 F.3d 56, 58-59 (2d Cir. 2011) (per curiam).  Plaintiffs have satisfied this requirement.  (See Declaration of Diana R. Cohn, Esq., dated Sept. 29, 2025 ("Cohn Decl."), Dkt. No. 21, Exs. 1, 3.)

The court next assesses whether plaintiff's counsel requests a reasonable hourly rate.  Lunday v. City of Albany, 42 F.3d 131, 134 (2d Cir. 1994).  A reasonable hourly rate is "the rate a paying client would be willing to pay . . . bear[ing] in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively."  Arbor Hill, 522 F.3d at 190.  Reasonable hourly rates should be based on "rates prevailing in the community for similar services of lawyers of reasonably comparable skill, experience, and reputation."  Cruz v. Loc. Union No. 3 of IBEW, 34 F.3d 1148, 1159 (2d Cir. 1994) (citation omitted).  A judge may determine prevailing rates based on evidence presented, knowledge of rates charged in the community and "the nature of representation and type of work involved in a case."  Arbor Hill, 522 F.3d at 184 n.2; see Chambless v. Masters, Mates & Pilots Pension Plan, 885 F.2d 1053, 1059 (2d Cir. 1989).

18

Plaintiffs' former counsel, Virginia & Ambinder, LLP ("V&A"), billed the Funds for the services of partner Adrianna R. Grancio at a rate of $410 per hour and legal assistants Eva Keating and Abigail Frankel at a rate of $155 per hour.  (See Cohn Decl. ¶¶ 13-15, Ex. 1.)  Current counsel, O'Donoghue & O'Donoghue LLP, billed the Funds for the services of partner Diana R. Cohn at a rate of $450 per hour and associate Jorge Salles Diaz at a rate of $340 per hour.  (Id. ¶¶ 20-21, Ex. 3.)

In similar ERISA matters, courts in the Eastern District of New York have awarded fees in the range of $200 to $450 per hour for partners, $200 to $325 for senior associates, and $100 to $200 for junior associates.  See Trs. of Pavers & Rd. Builders Dist. Council Welfare, Pension, & Annuity Funds v. IKNA Constr. LLC, No. 24 CV 561, 2024 WL 4894771, at *15 (E.D.N.Y. Nov. 26, 2024); Trs. of Plumbers Loc. Union No. 1 Welfare Fund, Additional Sec. Benefit Fund, Vacation & Holiday Fund, Trade Educ. Fund, 401(k) Sav. Plan v. Tri-C Mech. Inc., No. 22 CV 1590, 2024 WL 4290823, at *15 (E.D.N.Y. Sept. 10, 2024), report and recommendation adopted, 2024 WL 4287353 (E.D.N.Y. Sept. 25, 2024); Trs. of Pavers & Rd. Builders Dist. Council Welfare, Pension, & Annuity Funds v. Rici Corp., No. 23 CV 5856, 2024 WL 4314958, at *8 (E.D.N.Y. Aug. 19, 2024).  Thus, the hourly rates for the two partners are within the range of rates recognized as reasonable in this district.

However, the requested $340 hourly rate for Mr. Salles Diaz is excessive, given that he is a 2024 law school graduate.  (Cohn Decl. ¶ 21.)  I therefore recommend reducing his hourly rate to $200.  In addition, the requested hourly rate of $155 per hour for legal assistants is higher than the rate typically awarded for legal assistants in this district.  See IKNA Constr. LLC, 2024 WL 4894771, at *16 (reducing hourly rate for V&A legal assistants to $90 per hour); Tri-C Mech. Inc., 2024 WL 4290823, at *15 (same); Finkel v. O.H. & M. Elec., Corp., No. 23

19

CV 1076, 2024 WL 4648136, at *6 (E.D.N.Y. Jan. 19, 2024) (reducing V&A legal assistant rate to $100 per hour).  I recommend awarding fees for services rendered by legal assistants at the reduced rate of $100 per hour.

The court next looks to the reasonableness of the number of hours billed.  To determine the reasonableness of the hours spent on the litigation, the court must make "a conscientious and detailed inquiry into the validity of the representations that a certain number of hours were usefully and reasonably expended."  Maldonado v. La Nueva Rampa, Inc., No. 10 CV 8195, 2012 WL 1669341, at *13 (S.D.N.Y. May 14, 2012) (quoting Lunday, 42 F.3d at 134). The "critical inquiry is 'whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures.'"  Id. (quoting Grant v. Martinez, 973 F.2d 96, 99 (2d Cir. 1992)).  Here, plaintiffs' counsel seeks compensation for 32.28 hours[7] of work. (Cohn Decl. ¶¶ 16, 23, Exs. 1, 3.)  These hours are well within the range of hours expended in similar default judgment cases.  See IKNA Constr., 2024 WL 4894771, at *17 (collecting cases). I therefore recommend awarding plaintiffs $7,109 in attorney's fees ((2.6 × $410) + (1.5 × $450) + (25.5 × $200) + (2.68 × $100)).

ERISA also provides for the recovery of costs associated with litigation commenced to recover unpaid fringe benefit contributions.  29 U.S.C. § 1132(g)(2)(D); see also Finkel v. Firequench, Inc., No. 23 CV 4868, 2024 WL 320870, at *8 (E.D.N.Y. Jan. 29, 2024), report and recommendation adopted as modified, 2024 WL 4249224 (E.D.N.Y. Sept. 20, 2024). "The party requesting reimbursement of its costs, however, must provide the court with adequate documentation not only showing costs were incurred, but that they were paid."  Finkel v. KLK

---

[7]  This is based on my own review of counsel's time records and not counsel's declaration summarizing the hours spent.

Elec., Inc., No. 19 CV 4945, 2020 WL 3885739, at *4 (E.D.N.Y. June 25, 2020) (quotation marks and citation omitted). Only those costs that are tied to "identifiable, out-of-pocket disbursements" are recoverable. Moon v. Gab Kwon, No. 99 CV 11810, 2002 WL 31512816, at *8 (S.D.N.Y. Nov. 8, 2002) (quoting Kuzma v. I.R.S., 821 F.2d 930, 933-34 (2d Cir. 1987)). Here, plaintiffs seek $499.44 in costs, representing the court filing fee, process server fees, computerized research fees, and postage. (Cohn Decl. ¶¶ 17, Ex. 2.) I find these costs reasonable and sufficiently documented, and I therefore recommend that plaintiffs be awarded $499.44 in costs.

Defendant Pastena is jointly and severally liable for plaintiffs' attorney's fees and costs. See Local 1992 Pension Fund v. A-G Elec. Supply Co., No. 21 CV 3441, 2024 WL 872467, at *8 (E.D.N.Y. Feb. 6, 2024) (because court had already found a basis for individual liability, plaintiffs were entitled to an award of attorney's fees from the individual defendant), report and recommendation adopted, 2024 WL 866235 (E.D.N.Y. Feb. 28, 2024); Goodwin v. Hawker Dayton Corp., No. 19 CV 4284, 2019 WL 6223955, at *8 (S.D.N.Y. Nov. 22, 2019) (finding individual defendant jointly and severally liable for attorney's fees and costs), report and recommendation adopted, 2019 WL 6729197 (S.D.N.Y. Dec. 10, 2019); Upstate New York Eng'rs Health Fund v. Oneidaview Pile Driving, Inc., No. 15 CV 512, 2017 WL 1483446, at *5 (N.D.N.Y. Apr. 25, 2017) (same).

**CONCLUSION**

For the reasons stated above, I respectfully recommend that the Local 1 Funds be awarded $162,068.71, representing delinquent contributions of $11,957.42 for May through June 2024; estimated contributions of $98,079.39 for July 2024 through March 2025; $22,007.36 in liquidated damages on the contribution delinquency; $1,100 in administrative fees; 401(k) Salary

Deferrals of $22,579.44 for the period of April 16, 2024 to January 7, 2025; liquidated damages of $4,515.89 on the 401(k) Salary Deferral delinquencies; and lost earnings in 401(k) Salary Deferrals of $1,829.21.  I further recommend that the Local 1 Funds receive interest on the delinquent contributions and 401(k) Salary Deferrals at the rate of ten percent per annum through the date of judgment, plus mandatory post-judgment interest at the statutory rate.  In addition, I recommend that the National Funds be awarded $2,208.86 in unpaid employee benefit contributions for May through June 2024 and estimated contributions of $19,254.87 for July 2024 through March 2025, for a total of $21,463.73.  I also recommend that the UANPF be awarded liquidated damages of $2,080.31 and the ITF be awarded liquidated damages of $132.14.  I further recommend that the National Funds receive interest on the delinquent contributions through the date of judgment, plus mandatory post-judgment interest at the statutory rate.  Finally, I recommend that plaintiffs be awarded $7,109 in attorney's fees and $499.44 in costs.

Plaintiffs' counsel is directed to serve copies of this Report and Recommendation on defendants by regular mail, and to file proof of service with the court within ten days of the date of this Report and Recommendation.  Any objections to this Report and Recommendation must be filed electronically within fourteen days.  Failure to file objections within the specified time waives the right to appeal the district court's order.  See 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72, 6(a), 6(d).

Respectfully submitted,

_Robert M. Levy_
ROBERT M. LEVY
United States Magistrate Judge

Dated: Brooklyn, New York
     March 6, 2026

22